**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 10-CR-92-LRR |
| vs. | **AMENDED AND SUBSTITUTED** |
| JOHN DOLEHIDE, | **ORDER** |
| Defendant. | |

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . *1*

*III. SENTENCING FRAMEWORK* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.  EVIDENTIARY RULES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.   ISSUES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.   Enhancement Under USSG §2G2.2(b)(3)(B)* . . . . . . . . . . . . . . . . . *4*
    *B.   Variance or Departure* . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*VI.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

## *I. INTRODUCTION*

The matter before the court is the sentencing of Defendant John Dolehide.

## *II. RELEVANT PROCEDURAL BACKGROUND*

On October 12, 2010, the government filed a two-count First Amended Information (docket no. 13) against Defendant John Dolehide. Counts 1 and 2 charged Defendant with Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). On that same date, Defendant waived indictment and pled guilty to Counts 1 and 2 of the First Amended Information.

On October 27, 2010, the court accepted Defendant's guilty pleas. On December 20, 2010, the United States Probation Office ("USPO") released a draft copy of Defendant's Presentence Investigation Report ("PSIR"). Both parties lodged objections. On January 19, 2011, USPO released a final version of the PSIR (docket no. 27). On March 11, 2011, the government filed its sentencing memorandum ("Gov't Sent. Mem.") (docket no. 37). That same date, Defendant filed his sentencing memorandum ("Def. Sent. Mem") (docket no. 38). Defendant also filed a Motion for Variance or Departure (docket no. 39).

On March 23, 2011, the court commenced Defendant's sentencing hearing ("Hearing"). Attorneys Brent D. Rosenberg and Mark John Mahoney represented Defendant. Assistant United States Attorney Peter Deegan, Jr. represented the government. At the Hearing, the court received evidence, heard argument and listened to Defendant's allocution.

The court advised the parties that it would take the sentencing issues under advisement, issue a written opinion and then reconvene the Hearing to impose sentence.

All contested issues in Defendant's sentencing are now fully submitted and ready for decision.[1]

### III. SENTENCING FRAMEWORK

A "district court should begin [a sentencing proceeding] with a correct calculation of the [defendant's] advisory Sentencing Guidelines range." *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir. 2008). A defendant's Guidelines range "is arrived at after determining the appropriate Guidelines range and evaluating whether any traditional Guidelines departures are warranted." *United States v. Washington*, 515 F.3d 861, 865 (8th Cir. 2008).

---

[1] After the submission of the issues, Defendant filed a Sealed Motion for Self Report (docket no. 45) which has not to date been resisted.

"[A]fter giving both parties a chance to argue for the sentence they deem appropriate, the court should consider all of the factors listed in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by either party." *Braggs*, 511 F.3d at 812. "The district court may not assume that the Guidelines range is reasonable, but instead 'must make an individualized assessment based on the facts presented.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)); *see, e.g.*, *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable.").

The district court "has substantial latitude to determine how much weight to give the various factors under § 3553(a)." *United States v. Ruelas-Mendez*, 556 F.3d 655, 657 (8th Cir. 2009); *see also United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) ("'[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable.'" (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)). "If the court determines that a sentence outside of the Guidelines is called for, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Braggs*, 511 F.3d at 812 (quoting *Gall*, 128 S. Ct. at 597). "The sentence chosen should be adequately explained so as 'to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id.*

### IV. EVIDENTIARY RULES

The court makes findings of fact by a preponderance of the evidence. *See, e.g.*, *United States v. Bah*, 439 F.3d 423, 426 n.1 (8th Cir. 2006) ("[J]udicial fact-finding using a preponderance of the evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner."). The court considers a wide variety of evidence, including the undisputed portions of the PSIR, as well as the testimony and other evidence the parties introduced at trial and at the Hearing. The court does not "put on

blinders" and only consider the evidence directly underlying Defendant's offenses of conviction. In calculating Defendant's Guidelines range, for example, the court applies the familiar doctrine of relevant conduct. *See* USSG §1B1.3 (2008). The Eighth Circuit Court of Appeals has repeatedly held that a district court may consider uncharged, dismissed and even acquitted conduct at sentencing. *See, e.g.*, *United States v. Whiting*, 522 F.3d 845, 850 (8th Cir. 2008). When relevant and "accompanied by sufficient indicia of reliability to support the conclusion that it [was] probably accurate," the court credits hearsay. *United States v. Sharpfish*, 408 F.3d 507, 511 (8th Cir. 2005). The sentencing judge is afforded great discretion in determining the credibility of witnesses and making findings of fact. *United States v. Bridges*, 569 F.3d 374, 378 (8th Cir. 2009).

## *V. ISSUES*

The instant memorandum addresses: (1) whether a **5**-level increase pursuant to USSG §2G2.2(b)(3)(B) applies and (2) whether the court should depart or vary downward from the advisory Guidelines range.

### *A. Enhancement Under USSG §2G2.2(b)(3)(B)*

USSG §2G2.2(b)(3)(B) directs the court to apply a **5**-level increase to Defendant's base offense level if "the offense involved . . . [d]istribution for receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain[.]" The Eighth Circuit Court of Appeals "has applied the enhancement in cases where the defendant received and shared child pornography files through peer-to-peer file-sharing networks." *United States v. Bastian*, 603 F.3d 460, 466 (8th Cir. 2010) (citing *Untied States v. Ultsch*, 578 F.3d 827, 829-30 (8th Cir. 2009)); *United States v. Stults*, 575 F.3d 834, 849 (8th Cir. 2009); *United States v. Griffin*, 482 F.3d 1008, 1012-13 (8th Cir. 2007).

> "[W]hether a defendant qualifies for the five-level enhancement must be decided on a case-by-case basis, with the government bearing the burden of proving that the defendant 'expected to receive a thing of value—child pornography—when he used the file-sharing network to

> distribute and access child pornography files.'" *Stults*, 575 F.3d at 849, *quoting Griffin*, 482 F.3d at 1013. The government can meet its burden with direct evidence, such as an admission by the defendant that he knew he was using a file-sharing network, and could download files from others who could download files from him. *See Griffin*, 482 F.3d at 1013. The government can also meet its burden with indirect evidence, such as the defendant's technical sophistication in computers, inferring that he knew that by using a file-sharing network, he could download files from others who could also access his files. See *Stults*, 575 F.3d at 849.

*Bastian*, 603 F.3d at 466.

Here, the government offered both direct and indirect evidence. With respect to direct evidence, Defendant admitted in his interview with law enforcement that he understood that the file-sharing network he used, LimeWire, "is in fact file[-]sharing because [he was] getting files from other people." Government Exhibit 3 (docket no. 41-1) at 6. Additionally, Defendant "said he was not surprised by the fact that investigators were able to use LimeWire to connect to his computer and download child pornography." PSIR at ¶ 16. The government also provided indirect evidence—namely, Defendant's familiarity with computers. Defendant admitted that he installed the LimeWire program on his computer and he was able to describe, in detail, how it works. Further, forty-five videos containing child pornography were stored in a separate folder on Defendant's computer.

For all these reasons, the court will apply the **5**-level increase to Defendant's Base Offense Level. This brings Defendant's Base Offense Level to **36**. Defendant's Criminal History Category is I. Therefore, the advisory Guidelines suggest a custody range of 135-168 months.

### B. Variance or Departure

Post-*Booker*, the court must determine whether a non-Guidelines sentence is appropriate after determining the Guidelines range and any permissible departures within

the Guidelines structure. *United States v. Myers*, 503 F.3d 676, 684 (8th Cir. 2007). The court has a "responsibility to select a sentence that [is] 'sufficient, but not greater than necessary' to comply with the statutory sentencing purposes." *United States v. Gray*, 577 F.3d 947, 950 (8th Cir. 2009) (quoting 18 U.S.C. § 3553(a)); *see also United States v. Butler*, 594 F.3d 955, 967 (8th Cir. 2010) (same). "[A] district court's job is not to impose a reasonable sentence, but rather to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a). *United States v. Lytle*, 336 F. App'x 587, 588 (8th Cir. 2009) (citations and internal quotation marks omitted). In analyzing a motion for a downward variance, a "district court has wide discretion to weigh the factors in each case and assign some factors greater weight than others[.]" *United States v. Kane*, 552 F.3d 748, 755 (8th Cir. 2009) (citation omitted).

Defendant filed a Motion for Variance or Departure and a brief in support thereof, which was resisted in the government's Sentencing Memorandum. In his Brief, Defendant does not point to any specific Guideline for grounding his departure motion. He mentions "diminished capacity pursuant to the Guidelines." Def. Sent. Mem at 3. The general policy statement regarding departures is found in USSG §5K2.0. In cases of crimes involving children and sex offenses, the Sentencing Commission's policy is that a sentencing court may impose a sentence below the advisory Guidelines range only if the court finds that there exists a mitigating circumstance of a kind or to a degree that has been affirmatively and specifically identified as a permissible ground of downward departure in a Guideline or policy statement issued under 28 U.S.C. § 994(a). USSG 5K2.0(b). USSG § 5K2.13 is a policy statement concerning diminished capacity that has been issued under 28 U.S.C. § 994(a).

In order to establish a diminished capacity departure, Defendant has the burden to establish two things: (1) that he committed the offense while suffering from a significantly

reduced mental capacity and (2) that this significantly reduced mental capacity contributed substantially to the commission of the offense. USSG §5K2.12.

> "Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to: (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrong.

USSG § 5K2.13 n. 1. As explained below, Defendant has failed to establish both prongs by a preponderance of the evidence.

On the issue of downward variance, Defendant argues that an analysis of the sentencing factors at 18 U.S.C. § 3553(a) in relation to this case establish that a downward variance is appropriate. Specifically, Defendant urges the court to vary downward because the child pornography Guidelines as applied would result in an unreasonable sentence.[2] Defendant also argues the advisory Guidelines are too severe because Defendant poses no "palpable danger to others" as shown by his prior exemplary life and "the implications" of his mental disability—Asperger's Syndrome. Def. Sent. Mem at 57. The argument is that because Defendant is not "neuro-typical" a sentence of incarceration would be cruel and dangerous. Defendant suggests that the federal prison system cannot accommodate and protect individuals with Asperger's Syndrome.

With regard to the argument that the advisory Guidelines applicable to child pornography are too severe and not the result of empirical research, the court notes that they are a starting point in arriving at a disposition in every case. *See Gall*, 552 U.S. at

---

[2] The Eighth Circuit Court of Appeals has made it clear that "reasonableness" is an appellate standard—not a district court standard. This court's responsibility is to impose a sentence that is "sufficient but not greater than necessary to achieve the goals of sentencing." *Lytle,* 336 F. App'x at 588.

50. After calculating the advisory Guidelines the court is required to give serious consideration to a departure from the Guidelines. *Id*. at 45. There is no requirement that a sentencing court disagree with any sentencing Guideline "whether it reflect a policy judgment of Congress or the Commission's 'characteristic' empirical approach." *United States v. Jones*, 563 F.3d 725, 730 (8th Cir. 2009).

The sentencing argument du jour for possession of child pornography in federal court is the allegation that a defendant suffers from Asperger's Syndrome and thus is entitled to probation. Individuals who were previously diagnosed with ADHD and other personality disorders are now re-labeled as afflicted with an "Autistic Spectrum Disorder," one of which is Asperger's Syndrome. While the court does not dispute that a diagnosis of Asperger's Syndrome can be a permissible basis for a departure or variance, the court must carefully analyze the credibility of the arguments made in light of the facts of the case to determine if a variance or departure is appropriate.

To make a judgment on whether Defendant has a significant mental impairment the court first looks to his mental health history as chronicled by his treating professionals prior to the search of Defendant's computer and his interview by law enforcement, both of which occurred on July 9, 2009. In this case, after the July interview, the mental health issues bearing on sentencing were handled primarily by forensic psychologists, David Holmes and Eric Ostrov—not independent, objective evaluators or treaters.

The records provided by the defense establish that Defendant was evaluated in 2007 by V.L. Scaramella-Nowinski, Psy. D. ("Scaramella"). The history suggests the evaluation was prompted by Defendant's low marks in college and his behavior at home. Scaramella noted Defendant was intellectually talented but had difficulties with attention, organization and social awkwardness. She also noted wide fluctuations of mood. She described Defendant as a talented actor and musician. Finally, she noted minor repetitive behavior and sadness, anxiety and lack of energy. Scaramella recounted Defendant's

prior diagnosis and treatment for Attention Deficit Disorder, as well as family history including siblings with ADD and High Functioning Autism Spectrum Disorder. Scaramella made several recommendations in order to improve Defendant's deficits in attention, memory, organization and social interactions to improve his ability to follow directions and instructions at school and at home. An anti-depressant was also prescribed which Defendant later told law enforcement was helpful but reduced his sex drive. The diagnosis was Attention Deficit Disorder (predominately inattentive type) and mild major depressive disorder.

After the July 9, 2009 search warrant and interview of Defendant by law enforcement, Defendant's father, a physician from Dubuque, sought out David Holmes. Holmes is a forensic psychologist from New Jersey, who for over forty years has been involved in starting businesses that assist those diagnosed with autism, appears on television and radio programs to talk about autism and his business and lectures and testifies in court relative to autism (including, "a couple of child pornography cases."). Holmes's testimony at the Hearing consisted of a series of generalities regarding Asperger's Syndrome, which the court finds unhelpful in analyzing the sentencing factors as related to this specific defendant.

When he testified about Defendant's criminal actions and Defendant's interview with law enforcement, it was apparent to the court that Holmes was attempting to spin the court, overlooking Defendant's responses during the interview which were contrary to Holmes's testimony and attempting to explain away Defendant's admissions to law enforcement. With limited exposure to Defendant—he spent about two hours with him—Holmes examined prior psychological records concerning Defendant and talked to Defendant's family and attorneys and made a diagnosis of Asperger's Syndrome. He then referred to Defendant's prior treaters and "clarified" that those individuals had actually meant to diagnose Asperger's. No treating professional of Defendant was called to testify

and then undergo cross-examination. Although the court heard a great deal from Holmes on his own credentials and activities regarding Autism Spectrum Disorders, Holmes has never been a treating psychologist for Defendant and in fact has not done any clinical work with any client since very early in his career. In terms of treatment for Defendant, Holmes was critical of the treatment available in the Bureau of Prisons, although he knew nothing about it.

Defendant is receiving treatment from Leonard T. Carr, M.D., and Richard A. Markin, PhD. The court was not told when that treatment commenced but the nature of the letters produced indicate they were likely engaged after the search warrant and interview of Defendant by law enforcement on July 9, 2009. The nature of the treatment was not described but we do know it consists of talking on the phone to one of the doctors weekly and traveling to see a doctor monthly. In a letter to the court dated June 7, 2011, Carr and Markin suggest they are using the following treatment modalities: medication coupled with restructuring and retraining so Defendant can learn to self-organize and stay focused. All Holmes said about treatment was that Defendant needed to be taught what he can do and what he cannot do and take his medication. This treatment seems similar to the treatment Defendant received from Scaramella in 2007. Holmes also expressed concern with Defendant becoming a victim in the prison system without any true knowledge of the Bureau of Prisons's resources and segregation of prisoners by security level and personal characteristics.

Defendant is at least of average intelligence and according to Scaramella, of "superior intellect." He is polite, can carry on a conversation by listening and responding to questions. His answers during the July 2009 interview with law enforcement were not overly verbose as suggested by Holmes but rather were straightforward. He has not been socially isolated as Holmes suggested. Defendant has lived independent of his family, gone to school and had sexual relationships with females in his own age group. He has

friends.  He has no prior criminal convictions.  There was no indication he has unique or circumscribed interests that he talks about over and over such as described by Holmes.[3]

Defendant claims he first saw a piece of child pornography at age 13 and later at age 15 but his possession of child pornography did not begin until a few months before the execution of the search warrant and culminated in his arrest when he was in his mid-twenties.  Defendant's theory that he did not know that downloading child pornography was wrong is contradicted both by Defendant's untruthful statement to law enforcement during his July 2009 interview with to the effect that he deleted images of child pornography from his computer and his statement that it was unfortunate that he had not sought treatment before.  Contrary to Holmes's testimony and the other post-search warrant evaluators or treaters, Defendant demonstrated in his interview with law enforcement that he was aware, prior to the search warrant, that as a direct result of his downloading of child pornography, he was contributing to the market and that would entice others to "possibly take things further which [he] disagreed with."  He also admitted he had tried to distract himself from the use of pornography. He demonstrated that he knew what he was doing and why he was doing it.  Also, contrary to Holmes's testimony and the opinions of the post-search warrant evaluators and treaters, merely telling Defendant not to download or distribute child pornography has not been effective in the past.  Defendant's interview and his mother's statements indicate that when he downloaded child pornography for the first time at age 13, she told him not to do that again and of course we know he did.

In any event, if the defense witness's testimony is to be credited, Defendant does not have the ability to internally monitor his own actions.  Defendant admitted that his

---

[3] His interest in playing video games seems to be consistent with other "neuro-typical" young adults who use technology to interact rather than engaging face-to-face, thus preventing development of fluent social skills in generations of Americans.

interest in child pornography was intermittent and he had been attempting to distract or destroy his interest. Defendant admitted to law enforcement that he frequently masturbated while looking at pornography.[4] With an acknowledged sexual attraction to children as young as four years old and an admitted sexual attraction to children, including his roommate's children, the court finds Defendant poses a significant risk to the safety of children and does need sex offender treatment in a secured environment.

While Defendant may or may not be accurately diagnosed with Asperger's Syndrome (at least a mild case thereof), the evidence is clear that Defendant is not suffering from a significantly reduced mental capacity. There is no credible evidence that Defendant's mental health condition contributed in a significant way to his offense of conviction. His case does not fall outside the heartland of cases that come before the court. On a daily basis the court sentences Defendants who have Attention Deficit Disorder, depression and anxiety. Many act on impulse and make disastrous decisions. Some are easily influenced by others or alternate between being the aggressor and the victim.

Anecdotes aside, there is virtually no credible evidence that sending Defendant to prison will result in greater danger to him as opposed to other so-called "neuro-typical" individuals. Defendant's post-search warrant treaters have no information about the segregation of prisoners, security measures and treatment options. The instances of Defendant buying a car for a girlfriend and enlisting in the military after hearing the pitch from a recruiter are hardly predictive of the behavior of Defendant in a very controlled environment. The Bureau of Prisons is responsible for over 200,000 prisoners from a variety of backgrounds, with a variety of personality and learning disorders. Some are

---

[4] Defendant describes himself as a victim of "self molestation"—seeking stimulation by masturbating. Although Holmes suggests he does not understand this description, it is an apt description of some of Defendant's sexual activity.

12

seriously impaired. The male prisoners are classified by security level (minimum, low, medium and high) and assigned to serve their time at a facility that is appropriate for them. Some institutions have special mental health missions including treatment of those who are sex offenders such as Defendant.

## VI. CONCLUSION

After carefully considering all the statutory factors that apply under 18 U.S.C. § 3553(a), the sentencing evidence and the written and oral arguments of the parties, the court finds the sentence that is sufficient but not greater than necessary to achieve the goals of sentencing is a Guidelines sentence of **135 months** followed by a **eight year term of supervised release**. Accordingly, the Motion for Variance (docket no. 39) is **DENIED**. When the court reconvenes the Hearing, it shall sentence Defendant in a manner consistent with this memorandum. The court **GRANTS** Defendant's "Motion for Self Report" (docket no. 45). Defendant will be permitted to self-surrender on terms and conditions to be dictated into the record when the sentence is imposed.

**IT IS SO ORDERED**.

**DATED** this 6th day of May, 2011.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA